Please just let us know how much time you've reserved for rebuttal. Clerk may call the first case. Case number 16-2432, Larry Richardson v. Catherine Bauman et al. Oral argument not to exceed 15 minutes per side. Mr. Kelzer for the appellate. Good morning. I'd like to reserve five minutes of my time for rebuttal, if I may. I'm Jeff Kelzer. I am the attorney for the plaintiff and appellant, Larry Richardson. Mr. Richardson is an inmate in the Michigan correctional system. And back in 2009, while an inmate, he was threatened. He reported these threats to prison officials. He requested protection. The request for protection was denied, and he was stabbed by other inmates. He was then transferred to another prison. He was threatened again. He reported the threats again. He requested protection again. The protection was denied again. And he was stabbed again. Convicted felons like Mr. Richardson owe a debt to society. And they can serve that debt by being incarcerated. But they nevertheless have a constitutional right to be free from cruel and unusual punishment. And that corresponds to a duty on the part of the prison officials to protect inmates while they're incarcerated, serving their debt to society. This case concerns Mr. Richardson's claim that the defendants violated this duty and violated his right by failing to protect him when he was stabbed for the second time in a month, despite a prior stabbing, prior verbal threats, prior written threats sent to the prison administration, and also violated his right when they attempted to transfer him to a facility where his life had previously been threatened. It would seem like this appeal probably hinges on the question whether a jury based on this record could find that, contrary to what the prison officials are saying now, those officials, in fact, inferred that he was subject to a substantial risk of being assaulted as opposed to subjectively thinking, the officials, that he was fabricating this whole thing. And so I'm just curious, specifically, what evidence would you point to that would allow a jury to say, I don't believe what they're telling us now about thinking it was a fabrication, they actually knew he was in danger or inferred that he was in danger? Absolutely. Well, so the first group of defendants here are prison officials at the prison where Mr. Richardson was stabbed for the second time. We have officials from different prisons. That's correct. So the first group of four, which are defendants Nadeau, Mansfield, Bjorn, formerly Swift, and Robinson, were at Chippewa Correctional Facility, which is where Mr. Richardson was stabbed for the second time. And the defendants all testified that they had knowledge of his prison file, his record. And in that record, at the time he requested protection, would have been several requests for protection based on threats from the gang. The MS-13 gang would have been a written threat from the same gang. His record would have reflected that he was stabbed at a prior facility as a result of an assault from a prisoner. That's what the record reflected. There was no notation in any of that, any of those prison records, that anybody suspected these stabbings were self-inflicted. Is that correct? I don't believe there was at the time. And in fact, I think there may have been at the time markings to indicate, we can't prove that it's not self-inflicted. So if, to the extent they reach any conclusion on that, they couldn't, with, rule out that he was assaulted by another inmate. But the record did show that somebody thought that might be the case, but couldn't prove it. I mean, it didn't come out of thin air. That statement, we can't prove that it's not self-inflicted. That's true. Assumes that somebody thought it might be self-inflicted. That's true. Do you have to make a different showing or a specific showing as to each of these defendants? I mean, in Section 1983 cases, police officers, for example, we don't just sort of herd them all together and treat them the same. I mean, we look at the evidence as to each one. Shouldn't we do the same thing here? I think we should. And I think there are questions of fact that remain for each defendant. And I think the record does reflect that each of the defendants separately had an opportunity to review the information presented to them when making a decision on Mr. Richardson's request for protective segregation. Let me ask you this. We've got some evidence here which, if we take it in a light most favorable to your client, which is what we have to do, it would seem to support the objective prong necessary to prove your case. But all of the proof on the subjective prong, that is, that it was deliberate and sort of callous disregard of this risk, seems to be based on hearsay testimony. That is, his testimony that a prison official said something to him or, you know, whatever. Sure. All of that comes out even on summary judgment. And if we're left, I mean, what are we left with as evidence of a subjective intent just to recklessly or callously remain indifferent? I mean, they did put him in protection several times. They did move him around. Where is the proof of subjective intent here? Sure. As this court said in the Street case, 102 Federal 3rd 810, the very fact that a risk is obvious can be enough for a jury to find that a defendant was deliberately indifferent. If a risk is obvious enough and the defendants are aware of everything that supports that obvious risk, a jury can find that the defendant acted with deliberate indifference. I guess the problem then is how you define obvious in this situation. It seems pretty clear that those letters may have been forged. Most people who are out to get somebody in a prison don't write the prison officials and say, we're going to get your prisoner. It just, you know, it's borders on the preposterous. That's where I think the Hamilton versus Elaby case of this court from 2009 is instructive. In that case, there was a letter from the gang, the Aryan Brotherhood. Word of mouth, the prisoner also heard that they had taken a hit out on him. It wasn't the problem with Hamilton that it was conceded at oral argument, that that was accurate, that the jury could find that an official was actually drawn the inference because it was conceded at oral argument that the officials had drawn the inference. And that's contested here. Well, I would agree, but I would say a contested fact makes this appropriate for a jury to determine and not a judge on summary judgment. We're talking about the legal standard as to whether there is evidence that it was that an official actually drew that inference. And in the other case, it was admitted in this case, you have to have some evidentiary basis. And I think what Judge Daughtry is asking, and I think it's kind of the nub of the issue here is what is the evidentiary basis that they actually drew the inference? I think the defendants have testified to the fact that they thought the letter was not legitimate. I believe it was Defendant Mansfield from the Chippewa facility. On the protection denial. Right. Who testified that he never considered the threat to be legitimate. He always thought it was... And so you need to tell us what your evidence is that they actually thought that the threat was legitimate and they drew that inference and went on and disregarded it. I see. I think I would propose that the failure to ever consider it as legitimate was acting with deliberate indifference. I mean, you have to show that they're basically lying when they say that they thought it was not legitimate. You have to show that they subjectively thought it might well be legitimate, but they just didn't care. And now they're just saying, oh, no, we didn't think it was legitimate. You have to belie that. And I mean, what do you have to belie it? Well, we have the record from other defendants saying that we can't prove the letter is not legitimate. That appears in the record. I believe it was Officer Bolio. How does that show they're lying when they say we didn't think it was legitimate? It shows that they're not respecting the results of the investigation, which couldn't disprove the threat and then still just resting on a hunch that it was. Isn't there something else missing from the record? And that is in the Hamilton case, everybody knew there was an Aryan Brotherhood gang in the prisons. And in this case, there was a lot of testimony by the prison officials they'd either never heard of MS-13, or they had no knowledge that it was operating in their facility. I mean, there's no proof that there was a gang even. I know my time is up. May I respond? Surely. First, some of the prison officials testified that they have heard of members of inmates saying that they're members of the MS-13 gang. Now, it's not tracked by the prison as a security threat group, but other defendants testified that that doesn't mean they're not actually present. It could be that they're just not tracked as a security threat group. And Mr. Richardson's own experience of being threatened by someone who's telling them he's in the MS-13 gang. Well, we're back to hearsay. Well, but they may not have actually been in the gang, but that's at least what he was told. Okay. All right. Well, you'll have your rebuttal. Thank you. Thank you. Okay. Good morning, Your Honors. Adam Fricasse, appearing on behalf of the defendants. Dubious, non-credible claims of threats that give the appearance of manipulating the system in order to obtain a transfer cannot be the sole basis for obtaining such transfer. But isn't the question whether the actual stabbing itself was so obvious that the defendants should have known that there was a risk? And there's case law that says it's so obvious you can't ignore it. So you have a man who's been stabbed once and a letter threatening him. Why doesn't that fall into the category that's sufficient by its very obviousness? Because even taking that into consideration, I would say that there is another step after that, that even if it was so obvious that they could assume that the corrections officials had knowledge of this threat, that the next question is whether or not their actions were reasonable in taking and how they investigated this. And it would be our position that the actions taken here were reasonable. So what the defendants did first, and the three main issues are that the threats that were presented and the information presented by Mr. Richardson could not be verified. And he provided so little information that the investigation couldn't go forward anymore. The second issue is that the video footage of the alleged incidents, and I wouldn't even classify these as a stabbing, but the video footage of the alleged incidents didn't show anything happening. And third, there are problems with this letter, as this court is aware and as Judge Dautry has indicated. Why is it that you think the stabbing or the stab wounds or whatever themselves are not a strong indicator that he was attacked? I think two points. One, referring to the video, Mr. Richardson was able to provide information on the rough dates and the corrections officials were able to look at the video evidence. And Mr. Richardson indicated that they had occurred while he was walking to Chow Hall, for example, with the one, and it was in a large group of people. Now, despite the fact that it was in a large group of people, Mr. Richardson could not identify anybody that was in that area. But, I mean, my question is, why doesn't the fact of a two-inch laceration on his scapula that goes through his winter coat and his shirt, on his back, you know, so he's not necessarily seeing who did it, why isn't that sort of, you know, res ipsa loquitur sort of as to whether he was assaulted and therefore in danger of assault? I mean, in other words, why do you think that the stab wound is like itself a fraud? Is what that would seem to boil down to. Because turning to the video evidence in the investigation that was a part of the incident, there was nothing to corroborate that this even happened. Let's say he got shanked through his liver, okay, and he reports with that. Would the prison say, well, we don't think anything happened here because we don't have it on video? Not necessarily, no. Well, not at all. Not at all, no, yes. So it just depends, first you look at the wound and either the wound sort of corroborates his account that I was assaulted or it doesn't. And I guess what I'm asking is why do you think the wound does not itself corroborate an account that he was assaulted? Because there's no evidence here that it even occurred in this large group as he's saying that it was. I think the fact that he had the wound itself, I think Judge Daughtry indicated that there is taking the lights most favorable to the plaintiff, probably a legitimate point to the objective part of it. But that doesn't end the analysis, as I mentioned earlier. So it also turns to the subjective. I mean, how do they think he got... I guess what I'm trying to extract from you is, you know what, this was like a scratch. He could have easily done it. Here's evidence that he could have done it himself. I mean, if you don't have that, that's fine. But, you know, if he presents with some kind of stab-type wound, that would seem to conclusively show that he's been assaulted and probably is, you know, in danger of being assaulted. There, you had asked me how do they believe that these injuries occurred. I believe there was deposition testimony that they believe that they were self-inflicted because of the location of the cut on the shoulder and how it occurred. And the fact that Mr. Richardson said it occurred on a specific date at a specific location and when they checked the video, there was nothing on the video showing to corroborate his... But in both stabbings, he received treatment. So you know the date. Yes, and we're not contesting. I want to be clear. We're not contesting that he wasn't stabbed or anything like that. I think the documentation, like you mentioned, he received medical treatment. There's medical records showing that he did suffer injuries. I think the point of my argument essentially that I'm trying to make is that the actions taken by corrections officials after everything were reasonable. And that's part of the analysis here. Because they took this, they investigated. They requested that he file the protection for request for protection. They moved Mr. Richardson to protective segregation. And they placed him in there while they were talking with witnesses. They contacted as much as they could. So for example, one of the questions was raised as to the MS-13 gang being in the facilities altogether. The investigation, they discussed this with the security threat group coordinator to determine whether or not MS-13 had a presence that anyone had heard of in the Department of Corrections across the state. And nothing came of that. No one had heard of the, as you'd mentioned, no one had heard of the MS-13 either at all or in a facility. And so there were a lot of steps taken in this investigation and in order to verify anything. And plaintiff is relying on the Hamilton case. And I want to kind of further clarify some of the issues. As I think this court has already indicated, there are some distinguishing factors. A couple of other issues to distinguish with Hamilton is that, as this court had mentioned, the letter in this case went to the inspector, was addressed to the inspector, and was signed by the gang. There is testimony that is said that is completely unheard of. No one has ever heard of a gang that wants to cause harm to a prisoner or another prisoner that wants to put a hit out on another prisoner notifying corrections officials. And that may be reasonable, but the argument was that he wanted to leave the Upper Peninsula to get back nearer to family. Why wouldn't all the prisons in the Upper Peninsula then be listed in the threat as opposed to, what, half of them? The prisons that were listed in the threat were all Level 2 facilities. Mr. Richardson was a Level 2 prisoner at the time. Was that every Level 2? In the Upper Peninsula. The other four facilities that were not listed are either Level 1, 4, or 5. Wasn't he transferred to a Level 4? Eventually he was. And it was during the course of this litigation that all of the facilities, eventually at one point or another, either through the letter or through this litigation, every facility in the Upper Peninsula has become off the table and he has to go downstate. And there also is testimony, speculation as to that, that when a prisoner says he cannot go to any facility in the Upper Peninsula, that raises flags. Because if a prisoner is feeling threatened in the Upper Peninsula, why is the Upper Peninsula the difference? Your argument is based on his request of the court to be moved out of the Upper Peninsula? He didn't request that transfer in the preceding events. He requested protective segregation, which is very different from saying, I can't stay anywhere in the Upper Peninsula. Take me back near home. That is correct. And that's what I'm saying. At some point or another, either with the letter or at some point in the litigation, it has come out that all of the facilities in the Upper Peninsula are off the table, essentially. Let me ask you this, just as a matter of curiosity. I don't want to wander too far off the record, but there's something in the record that suggests that in the end they wanted to transfer him back to Newbury and he refused to go. Are you allowed as a prisoner in the MDOC to say you don't want to go to a certain prison? Not to my knowledge. I can't speak to that one way or the other, but I would be hard pressed to say yes. So is that just an allegation that is not substantiated by the record? Or am I going to get into the record and find out that a prisoner can say, no, I don't want to go to Newbury. Thank you very much. I believe he had refused, and I'm sure, I don't want to misspeak, so if I'm corrected, but I believe he had refused and he wasn't transferred to Newbury. Is that allowed under policy? No. At least to my knowledge. Isn't that part of his allegation? I didn't hear your first part. For refusing to transfer? That is my understanding. That's what it says. Yeah, but he was allowed to refuse, even being punished. I mean, nobody picked him up by the scruff of the neck and took him to Newbury. So where did he end up at the end of all this? And has he been harmed again by anybody? To my knowledge, no. And I have as of, I don't know if something's more recent, but as of 2015, I believe he was at Baraga Correctional Facility, which is in the Upper Peninsula. And I am not aware of any additional allegations. And that's a level four, is it? That is a level one and five, I believe. Okay, thank you. And so I want to, again, just kind of emphasize the reasonableness of the actions that were taken here by the correction officials, because again, as I mentioned, that is the standard, that is like the ultimate question as to whether or not their actions were reasonable in this case. And they were because, as I mentioned, the video footage could not verify anything. It did not show any injury occurred. It didn't show any scuffle or anything? No. And the corrections officials looked at both. And again, this occurred in a large setting. And the first stab was in an exercise room. Correct. Yes. And I thought there was no video of that. They, corrections officials reviewed video. I don't, I don't, I'm not aware if they're not. I'm not aware of there not being any video. My understanding is that they reviewed video of both. Sorry. As I'm hearing that back, yes, I can understand. I. You think there is? I believe there is video. Thank you. Yes. So I, I, if. In the exercise room. That is. Mel is in the group that was going to lunch or whatever it was for the second. That's my understanding. Yes. It's not mine, but that's mine. The medical descriptions of these wounds are in the record. I take it. I believe they are. If they're not, I do have them in front of me as well. But I do believe that they are. And. Do you have an indication of where in the record they are? Off the top of my head, I do not. I would be glad to get that if needed. Next question. Is the original letter from the gang in the record? It is not. Why is that? Because there, no one has been able to find it, to be honest. There is testimony about the letter that is in the record, both from depositions and from other exhibits. Plaintiff has admitted, obviously, that the letter, it is real. And so there is testimony about it. But the letter itself, during discovery, we went back to find it, could not be located. And so taking with all of this into consideration, taking into consideration the investigation that occurred, all of the questions that were asked, the lack of information that was provided by Richardson. The question is then whether the correction officials, viewing all of this at the time that they had it in front of them, were reasonable in their actions. And these corrections officials were. This isn't a negligence case. I mean, it's whether a jury could find that notwithstanding some of the things you've pointed to, these officials, in fact, inferred that he had a substantial risk of assault. And they just didn't really care very much. That's the question. And the question, yes. And, Your Honor, that is correct. And then the question is if they actually knew of it, if they responded reasonably. And if there was any question of fact to the jury that they responded reasonably, we posit that there isn't. And summary judgment was properly granted in this case because of the reasons that I have outlined. Because when you take everything into this consideration, there's no evidence showing that they unreasonably disregarded this risk. That they acted with such a malice and an intent to just disregard any risks that were being presented to them by Mr. Richardson. They investigated these fully. They asked him questions. They placed him in protective segregation while they were doing all of this investigation and cooperation. And ultimately, nothing came of it. And as I had mentioned, that claims like this cannot be the sole basis for obtaining a transfer in a correctional facility. Claims that are clear that this is just an attempt to manipulate, to go downstate, to be closer to friends and family. And so accordingly, summary judgment was properly granted. And we would respectfully ask that this court affirm summary judgment. All right. Thank you very much. Thank you, Your Honors. I'd like to first address the idea that Mr. Richardson didn't provide enough information to us when reporting these threats. Therefore, the defendants tried to investigate, but they went as far as they could. So they just threw him back in general population where he was stabbed for the second time. Mr. Richardson, when he was first transferred to Chippewa, he was brand new there. He didn't know the names of inmates. He didn't know where they locked. And he was threatened for the first time within a few days of arriving there. And the record reflects that. The record also reflects that even prison officials, resident unit managers who work closely with the inmates can't identify everybody that they work with by name. The problem was he was not able to give verifiable identity information. It's perfectly understandable that he doesn't know their names or their numbers or even where they lock or reside, however you designate that. But surely he would have known the race. Well, I believe he did say the ethnicity was Hispanic. On the second time around, I thought the first time around he denied any known characteristics. Well, I'm not sure about that as I stand here today, but on the second time around, which names or nicknames or something. That's correct. And those are, that's correct. Sorry to cut you off. He was able to, that was the extent of what he was able to provide for investigation. That's right. He was brand new to the facility and he said, this is the ethnicity. Here are the two nicknames I heard and they've threatened me. And by the way, I was just stabbed a week ago. And they apparently, so they say investigated and weren't able to find anything. So he was returned to general population and that's where he was stabbed. Would you concede that they did perform an investigation? There definitely some activity that would constitute an investigation. That was just a charade? I, I don't, I'm not sure. I don't. Could a jury, I mean, which, well, I just wonder, can a jury find that this was all just a front for, we want to keep him where he is and we could care less if he's going to be assaulted? I think a jury could find they just went through the motions. They were pleased to not have enough to go on to complete an investigation. I think a jury could find that. Does, you can disagree with the premise of this question if you like, but it would seem like these letters, at least as they've been described this morning, and as I recall them, kind of on their face are pretty dubious that they're authentic. And if that's true, wouldn't that be something that might make it harder to think that the officials actually thought this whole threat was, was true? I would say, assuming that it's true, that you're right, but. You can disagree with that. Yeah. And I don't believe that's true. And I will say it's an important fact here that the letter was in the defendant's custody and it's since been destroyed. The only record we have of it are some notes referencing it from the time, but we don't know if there's indicia of credibility in this letter, facts that Mr. Richardson himself might have known about, might not have known about that appear in this letter, things like that we're not able to assess because we don't have that letter. But it's a singular letter, right? Because there's some plurals, some mention the letters, and sometimes it's a one. So there's one particular letter that I am aware of that the prison officials were aware of at this time in October of 2009 at Chippewa Correctional Facility. I believe there was a later letter, but that's not at issue for the second stabbing. And there may have been earlier letters, but again, those, we don't have those either. When you have evidence or admission, is the singular one that came to Chippewa? That is the only letter I think we have a good idea of who saw it and somewhat an idea of what the content of the letter was based on records. There is a second letter in the record, is there not? Supposedly from the gang? Yes. Yeah, but that came at a later time. Well, yes. But looking at that might give us some idea about the authenticity of the first one. It might. You're correct. I'm sorry, and the letter is actually in the record? Do you have a record site to either of the letters? I don't believe we have a copy of either letter. Okay. Thank you, that was great. And to briefly address the tapes, the tapes have all been destroyed now. We don't have an opportunity to review them. We have to take defendants at their word that they reviewed these tapes, but we don't know what areas of the prison they reviewed tapes of, what time periods exactly. We don't know any of that. And there's also no tapes of Mr. Richardson harming himself or fabricating that. So to the extent there's any inference to be drawn from a lack of tapes, it should go in plaintiff's favor. That's a justifiable inference. All right. Well, thank you very much for your argument, both of you. The case will be submitted. Clerk may call the next case.